The next case on for argument is United States v. Serrano. Are we ready? Good morning, everybody. Jim Brandon. I represent Mr. Serrano. I do so along with Lisa Scolari. Mr. Serrano had a suppression hearing preceding his trial, which was by stipulation, and then he was sentenced. This is now the appeal. The argument presented today is whether evidence, the gun that was recovered from the woman he was with, should be suppressed, and whether his statements at the precinct house should also be suppressed. I know briefly some law, which I know is very familiar to the court, but an investigative stop requires at least a reasonable and articulable suspicion of criminal activity. It cannot be based on a mere hunch. An anonymous tip does not provide a basis for an investigative stop unless it is suitably corroborated and exhibits sufficient indicia of reliability. One question here, whether there was a stop, because at least under one view of these facts, and you can correct me if I'm wrong, they were questioning him, which doesn't require reasonable suspicion, articulable suspicion, and then they went to the arrest as soon as the gun was found in his girlfriend's purse, so that there was no, he was free to leave up to that point, would be the argument. That would be the government's argument. My argument, on the other hand, is that that's not so. When the police arrive at the scene, when Mr. Serrano first sees the police, there are several cars that arrive at once. He's confronted immediately by at least two officers. Then there is the commanding officer, if you will, Padilla or Padilla, who instructs Santiago to go up to Mr. Serrano, interrupt the questioning that's happening at that time, and make sure to hold him and not let him go until such time as this investigation is completed. I would say to you, at that time, he has been held. Even Santiago, the detective who testified in the case, said that Mr. Serrano was not free to leave. Mr. Serrano also said he didn't feel free to leave. I think it's sort of the judge's, the lower court's decision flies in the face of reality. When you're confronted by several police cars, and they're interviewing you, and at least, I don't know if Mr. Serrano heard it or not, but one officer tells the other, do not let him go. I think the circumstances suggest that he has been stopped for purposes of Terry. Is there some corroboration, though, that went along with the anonymous tip? Well, there was some limited corroboration. So the tip was that there are two people at this particular address, a woman, a man, and the clothes that they were wearing, and their approximate age. That stuff was confirmed by the officers when they get there, but not the particulars as to criminality, which the tip had provided that the man has been suspected or charged with a homicide, and that the woman is carrying a gun. There was nothing at the scene that would suggest that Mr. Serrano had killed somebody recently. There was no blood. There was nothing like that. And the gun, later found in the purse between Ms. Colon's legs, didn't show evidence, just to look at it in the plain view, that there was a gun inside. So while there is some very limited corroboration as to people standing on the corner, that doesn't corroborate any of the alleged criminality. What about further points that I think the government would argue here? That this was a high-crime area, a collective group of facts, and apart from the corroboration of the tip, this was a high-crime area. He didn't have identification, and that he was behaving nervously and evasively, taken together with the corroboration of the tip. Wouldn't that be enough? But he was stopped before the police learned all that. As to the high-crime area, I think almost every place in the Bronx or maybe Manhattan could be deemed a high-crime area. But with regard to the other facts that you've alleged, the fidgeting, that he didn't have identification, all that, in my opinion, followed the stop and cannot be used to justify the stop. I'm sorry. Well, I don't know the point at which they said hold him as opposed to when he said he didn't have any identification. I believe it was before then, which is important. Right. Okay. I think I should speak briefly about the standing issue because I know that the record was a bit murky in this regard. So ultimately, it is Mr. Serrano, in my view of the record, that on balance, given the totality of the circumstances, he made out a legitimate expectation of privacy. I note, however, that there was some flip-flop. So with regard to the affidavit that he filed requesting the suppression hearing, he referred to the purse as the purse, not his purse. He referred to the gun as a gun, not his gun. And he also mentioned, specifically, he referred to the purse as Christina's purse. So that would be his girlfriend's purse. Is there an argument if it's Christina's purse that he has standing to object to the search of it, which is what yielded the gun? There still would be because he has a legitimate expectation of privacy to the gun that is in her purse if he did not abandon it. And I don't think the record shows that he abandoned the purse. The police testified that when they arrived, that he moved slightly away from Ms. Colom, a total of 12 feet. She is his girlfriend. She was pregnant with his baby. It appeared from the record that she would have had the authority to not let other people get inside the purse to see the gun. And so I think that, on balance, he does maintain a legitimate expectation of privacy in the purse and to the gun. Could she have said, yeah, here's my purse, look at it? I think she could have, yes. I think she could have. If she could say that, does he have standing to object to its search? Is he a co-tenant in the purse? Correct. Correct. The record is unclear about that. Padilla was asked specifically whether his partner, a female partner who was specifically interviewing Colom, whether Ms. Colom granted consent. He said he had no idea. He didn't really hear what her answer was. So that would be the government's burden to prove, and they did not establish that. Thank you. Thanks, Mr. Brandon. And you've reserved two minutes for rebuttal. Good morning, Your Honors. My name is Rebecca Donaleski. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, and I represented the government in the proceedings below. The district court properly denied Mr. Serrano's motion to suppress. I'd like to address three of the points that defense counsel made in his argument. First, clearly established Second Circuit law, United States v. Vargas is one example, says that the officer's and the defendant's subjective intent does not matter. It is an objective test, and we don't look to whether the officer subjectively believed that the defendant was not free to leave. In fact, the record shows that it was a calm, consensual encounter. The officer's approach, Mr. Serrano asked him for his identification, asked him why he was in the neighborhood. Plainly, an objective view of the facts would show that a person would feel free to leave. Second, defense counsel argued about the lack of corroboration for the 911 call. As Judge Duffy recognized, there were six important facts that led to the reasonable suspicion. So first, the officers, by the time the stop or the seizure of Mr. Serrano occurred, had corroborated a number of important details in the 911 call. Not only the exact physical location and description of the male and female, but the fact that Mr. Serrano did not have identification, which in Officer Santiago's view, made it more likely that he was wanted for a crime. The fact that, again, the gun had been found precisely where the 911 caller predicted the gun would be found. And again, Mr. Serrano's behavior on the scene. He was fidgeting, looking around. He was acting suspiciously. So on a whole, coupled with the fact that it was a high-crime area at night, Judge Duffy properly found that the officers had corroborated a number of key facts in the 911 call and, based on their observations on the scene, had reasonable suspicion to stop Mr. Serrano. And third, just to briefly respond to the standing point, Mr. Serrano was not simply noncommittal in his statements before the district court. He made statements under oath saying that the bag was his and saying that the bag was Ms. Colon's, his girlfriend's. On this basis, and based on Judge Duffy's observations of Mr. Serrano in numerous hearings before him, Judge Duffy properly did not credit Mr. Serrano's statements. It is his burden to make out a reasonable expectation of privacy in the purse, and he simply failed to do so. And Rawlings v. Kentucky is a Supreme Court case on point in terms of Mr. Serrano not being able to show that he had a reasonable expectation of privacy in his girlfriend's purse. Unless the court has any further questions, the government will rest on its papers. No, there isn't any set of facts, hypothetical or otherwise, whereby Mr. Serrano would have standing if he will assert if, despite the fact that Judge Duffy found that he wasn't claiming ownership of the purse. There are certainly a set of facts by which a man can assert an expectation of privacy in the bag of an acquaintance. For instance, if he makes out facts regarding their relationship, how long he had known her, the circumstances under which he bailed the purse to his girlfriend, Mr. Serrano simply failed to do that. And instead, he put forth a number of completely inopposite statements before the district court. So on that basis— You can't deny on such— Exactly, exactly. Okay. Thank you, Mr.— Thank you, Your Honors. Mr. Brandon, anything further? Well, I'll just note that at the hearing itself, Mr. Serrano testified that the purse was his, which was consistent with his post-arrest statement to the police officers. When he said that, I'm a gun dealer. I purchased a gun from somebody in Virginia who was also a gun dealer. I put the ammunition in the gun. I put the gun in a T-shirt, and I put it in that purse. There was nothing else in the purse. It's not like there's lipstick in there or something that would make it appear to be Ms. Kalan's purse otherwise. And he testified, if I didn't say this, at the hearing that, again, it was his purse. So while in— Those statements were inconsistent with other statements he made. They were. I grant you that. But I think on balance, if we had to do a measurement test, I think there's at least 51 percent of his statements are, it was my gun, it was my purse, as opposed to the other 49 where he tried to flip-flop. Under the totality, I think that he carries that argument. That's why we have district judges. All right. And we'll sort that out. Okay. That's correct. Thank you. Thank you both. We'll reserve decision.